

FILED
CLERK, U.S. DISTRICT COURT
February 11, 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: CSI DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FERNANDA A. V.,[1]           )  NO. CV 17-8533-KS
       Plaintiff,       )
    v.                        )  MEMORANDUM OPINION AND ORDER
                         )
NANCY A. BERRYHILL, Acting   )
Commissioner of Social Security, )
       Defendant.       )
_____)

## INTRODUCTION

Plaintiff filed a Complaint on November 22, 2017, seeking review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On July 9, 2018, the parties filed a Joint Stipulation. (Dkt. No. 17 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for further proceedings. (Joint Stip. at 13.) The Commissioner requests that the Administrative

---

[1]     Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Law Judge's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 14.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On November 25, 2013, Plaintiff protectively filed an application for a period of disability and DIB. (Administrative Record ("AR") 22, 98, 167-73.) Plaintiff alleged disability commencing on February 28, 2011 due to injured left wrist, back, and left knee; premenstrual dysphoric disorder ("PMDD"); anxiety; and migraines.[2] (AR 98, 169, 191.) Her "date last insured" for DIB eligibility was March 31, 2016. (AR 22, 98.) After the Commissioner denied Plaintiff's application initially (AR 122-25) and upon reconsideration (AR 128-32), Plaintiff requested a hearing (AR 133).

At a hearing held on July 5, 2016, at which Plaintiff was assisted by a Spanish interpreter and appeared with an attorney, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (AR 69-97; *see also* AR 22.) On August 24, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application for a period of disability and DIB. (AR 22-35.) On September 22, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five-step sequential evaluation process, the ALJ initially found that Plaintiff met the insured status requirements through March 31, 2016. (AR 24; 20 C.F.R. § 404.1520.) The ALJ found at step one that Plaintiff had not engaged in substantial gainful

---

[2] Plaintiff was 34 years old on the alleged onset date of disability and thus met the agency's definition of a younger person. *See* 20 C.F.R. § 404.1563(c). (*See* AR 98.)

2

activity since her alleged disability onset date through her date last insured. (AR 24.) At step two, the ALJ found that Plaintiff had the following severe impairments: post-menopausal depressive disorder, left wrist sprain, left knee sprain, and lumbar musculoligamentous strain/sprain. (AR 24.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 24.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> "[t]he claimant can understand, remember and carry out simple and detailed work instructions, but not complex work instructions; the claimant can occasionally interact with coworkers and supervisors on a superficial basis; the claimant cannot have contact with the public; the claimant can adjust to changes in a routine work environment."

(AR 26.) Based on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Plaintiff could perform her past relevant work classified as a hand packager. (AR 33.) The ALJ alternatively found at step five that Plaintiff could perform other work existing in significant numbers in the national economy. (AR 33-34.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 35.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

//
//
//
//

# DISCUSSION

Plaintiff raises one issue, whether the ALJ properly weighed one of the medical opinions regarding Plaintiff's mental impairments. (Joint Stip. at 4-7.) For the reasons discussed below, the Court concludes that this issue does not warrant reversal of the ALJ's decision.

## I. The ALJ Properly Evaluated the Medical Opinion of Dr. de Selivtor

Plaintiff contends that the ALJ failed to properly evaluate the opinion of psychologist, Dr. I. Rayo de Selivtor. (Joint Stip. at 3, 9-14.)

### A. Facts

Plaintiff testified at the ALJ hearing that she last worked as a cashier on November 28, 2011. (AR 74.) She stopped working after she fell because of pain to her left arm, left leg, and back. (AR 74-75.) She indicated she was subsequently fired because her job could not accommodate her injury impairments. (AR 74.) When asked why she felt she could not work now, she said her emotional state prevents her. (AR 75.) She said she has had these emotional problems for "many years," including when she was working. (AR 75.) She did not know how she was able to work with these emotional problems in the past but suggested being younger might have helped. (AR 75-76, 86.) During the ALJ hearing, Plaintiff's attorney indicated that Dr. de Selivtor was Plaintiff's treating doctor. (*See* AR 73, 553-54.) Plaintiff's attorney asked Plaintiff during the hearing if she knew Dr. de Selivtor. (AR 79.) Plaintiff said she did not remember anyone by that name. (AR 79.) Plaintiff stated she was currently receiving mental health treatment at Northville Hospital, which was the same as Hillview. (AR 79-80.) However, she also said she had not received treatment with a

psychiatrist at Hillview for the past eight months because they stopped accepting her medical plan. (AR 79-80, 94.) She was still receiving medication. (AR 80.)

Plaintiff submitted a disability report dated November 26, 2013 in which she reported receiving mental health treatment from CO/M/LA Van Nuys Mental Health ("Van Nuys") and Northeast Valley Health Center ("Northeast Valley"). (AR 195-96.) She reported her first visit to Van Nuys was in March 2013 and she received treatment in the form of medications for PMDD[3] and anxiety. (AR 195-96.) She did not specify who treated her. She reported her first visit to Northeast Valley was in 2011 and that she received medication and counseling for PMDD and migraines. (AR 196.) She did not specify who treated her.

Plaintiff also submitted a disability report dated April 30, 2014 in which she reported receiving mental health treatment from Hillview Mental Health Center ("Hillview") and Northeast Valley Health Group ("Northeast Valley")[4]. (AR 245-46.) She reported her first outpatient visit at Hillview was on January 1, 2013. (AR 245.) She stated her reason for going to Hillview was for treatment for bipolar disorder, anxiety, and depression. (AR 245.) She listed the treatment she received as medications and evaluations. (AR 245.) She stated the doctor she saw at Hillview on a regular basis was Dr. Montano. (AR 245.) She reported her first outpatient visit at Northeast Valley was on January 1, 1998. (AR 246.) She listed her reason for going to Northeast Valley was for "primary, PMDD, anxiety, migraines, bipolar, insomnia and all other general health issues." (AR 246.) Her treatment included medications, testing, counseling, and evaluations. (AR 246.) She said the doctors she saw on a regular basis at Northeast Valley were Dr. McIntosh and Dr. Hudson. (AR 246.)

---

[3] Plaintiff's attorney and the ALJ refer to PMDD as post-menopausal depressive disorder (*see* AR 24, 73), but the medical records refer to it as premenstrual dysphoric disorder (*see* AR 619). The record also includes evidence that Plaintiff was in her thirties and has a child who was ten months old at the time of the ALJ hearing. (AR 77, 98.) The ALJ noted in his decision that Plaintiff complained of experiencing increased depression and irritability prior to and during her menstrual cycle (AR 30-31), so the incorrect name used for PMDD by the ALJ appears to be a harmless error. The parties also did not raise this as an issue.

[4] Plaintiff provides the same address for both Northeast Valley Health Center and Northeast Valley Health Group. (*See* AR 196 and 246.) Medical records show the real name is Northeast Valley Health Corporation. (*See* AR 481, 196.)

1    Plaintiff's record includes, *inter alia*, medical treatment records from Hillview and Northeast Valley, medical opinions from a Cristina Hudson and Dr. de Selivtor, and a medical source statement from Van Nuys saying Plaintiff was never a client. (AR 524.) The records from Hillview are dated between August 15, 2013 and May 5, 2016. (AR 555-614; *see also* AR 268-79.) The records from Hillview appear to reference only Dr. Julio Montano, a psychiatrist, as Plaintiff's treatment provider. (*See id.*) The records from Northeast Valley are dated between June 18, 2010 and January 4, 2016. (AR 450-517, 615-821.) The records from Northeast Valley include references to Drs. David McIntosh (AR 459), Sedi Hadadian (AR 487), Maria Ortiz (AR 499), Naghmeh Paktan (AR 507), Borzouyeh Poursharif (AR 638), and Rabin Kheradpour (AR 801), along with references to various medical assistants and nurse practitioners. (*See* AR 450-517, 615-821.) Cristina Hudson is a licensed clinical social worker and behavioral health therapist who treated Plaintiff from 2010 through at least February 1, 2014, but only her medical opinion is included in the record, not her treatment notes. (AR 532-38.) Dr. I. Rayo de Selivtor provided a medical opinion, but it does not specify where or for how long Dr. de Selivtor treated Plaintiff. (AR 553-54.) The medical records do not appear to include Dr. de Selivtor's name anywhere else.

### B.   Dr. de Selivtor's Medical Opinion

Waivered Psychologist, Doctor I. Rayo de Selivtor, Ph.D., completed a "Medical Opinion Ability To Do Work Related Activities [Mental]" source statement questionnaire on May 7, 2015. (AR 553-54.) Dr. de Selivtor noted Plaintiff's mental abilities to do unskilled work were unlimited or very good in relation to maintaining regular attendance and being punctual within customary, usually very strict tolerances. (AR 553.) Dr. de Selivtor noted Plaintiff's mental abilities to do semi-skilled and skilled work were unlimited or very good in relation to adhering to basic standards of neatness and cleanliness. (AR 554.)

//

Dr. de Selivtor noted Plaintiff's mental abilities to do unskilled work were limited but satisfactory in relation to remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and being aware of normal hazards and taking appropriate precautions. (AR 553.) Dr. de Selivtor noted Plaintiff's mental abilities to do semi-skilled and skilled work were limited but satisfactory in relation to understanding and remembering detailed instructions, setting realistic goals or making plans independently of others, dealing with stress of semiskilled and skilled work, interacting appropriately with the general public, maintaining socially appropriate behavior, traveling in unfamiliar places, and using public transportation. (AR 554.)

Dr. de Selivtor noted Plaintiff's mental abilities to do unskilled work were seriously limited but not precluded in relation to maintaining attention for two-hour segments, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (AR 553.) Dr. de Selivtor noted Plaintiff's mental abilities to do semi-skilled and skilled work were seriously limited but not precluded in relation to carrying out detailed instructions. (AR 554.)

Dr. de Selivtor did not note any of Plaintiff's mental abilities to do unskilled or semi-skilled and skilled work as being in the "unable to meet competitive standards" or "no useful ability to function" categories. (AR 553-54.) Dr. de Selivtor indicated Plaintiff had no

8

negative side-effects from her medications. (AR 554.) Dr. de Selivtor checked that Plaintiff's impairments would cause her to be absent from work both "about once a month" and "more than three times a month." (AR 554.) Dr. de Selivtor also said Plaintiff's impairments had lasted one year or more. (AR 554.)

### C. Consultative Psychiatric Examiner's Opinion

On February 19, 2014, Consultative Psychiatric Examiner ("CE") Maged Botros, M.D., Board Certified Psychiatrist, examined Plaintiff. (AR 547-52.) Plaintiff provided Dr. Botros with her history, a completed questionnaire provided by the clinic, and a copy of a medical record dated December 9, 2013 from Northeast Valley which noted Plaintiff had depression, took fluoxetine and Lamictal, and had a Worker's Compensation case. (AR 547.) Plaintiff reported that she had a history of depression beginning at age thirteen, that she had attempted suicide twice as a teenager, that she was admitted to a psychiatric hospital, that she had received psychiatric treatment for the last twenty years and took medications regularly, that she had anxiety and fear about going outside, and that she experienced mood swings especially during her menstrual cycle. (AR 548.) The CE's report notes that Plaintiff attempted suicide nine times and had been psychiatrically hospitalized five times. (AR 548.) It also notes that Plaintiff's father was mentally ill and committed suicide. (AR 549.) It includes that Plaintiff had a brain tumor removed. (AR 548; *see also* AR 72, 542,.) Dr. Botros listed Plaintiff's medications to include lamotrigine, fluoxetine, temazepam, cromolyn, tramadol, Nasonex, Claritin, metoclopramide, vitamin D, Mylanta, ranitidine, loperamide, sumatriptan, propranolol, and calcium. (AR 548.) Plaintiff reported that these medications help her. (AR 548.)

Upon examination, Plaintiff maintained eye contact, exhibited normal psychomotor activity, spoke normally, said she was sad, exhibited an anxious and constricted affect, had normal thought processes, had normal thought content with Plaintiff claiming no current

suicidal or homicidal thoughts or plans, and did not claim or exhibit responses to hallucinations. (AR 549-50.) Plaintiff recalled three out of three items immediately and after five minutes. (AR 550.) Her concentration was normal with Plaintiff performing serial sevens and spelling "table" backwards. (AR 550.) Her abstract thinking was intact. (AR 550.) Plaintiff named the current and two past presidents along with the capitals of the United States and California. (AR 550.) Her insight and judgment appeared to be intact. (AR 550.)

Dr. Botros diagnosed Plaintiff with depression, NOS. (AR 550.) Dr. Botros also made rule out diagnoses of major depressive disorder, recurrent, mild; bipolar disorder, type 2, current episode, depressed, mild in degree; premenstrual dysphoric disorder; anxiety disorder, NOS; agoraphobia or panic attacks; and social anxiety disorder. (AR 550.) Dr. Botros found moderate degree psychological stressors from occupational, educational, housing, and access to healthcare system problems. (AR 551.) Dr. Botros assessed Plaintiff's GAF score to be between fifty-one and sixty[5]. (AR 551.)

For the functional assessment, Dr. Botros opined Plaintiff would not have limitations on her daily activities and would not have repeated episodes of emotional deterioration that would affect her ability to work. (AR 551-52.) Dr. Botros opined Plaintiff would only have mild limitations in all other functional areas. (AR 551-52.) Plaintiff's overall prognosis from a psychiatric standpoint was good with possibility of improvement after treatment over

---

[5] "GAF" refers to Global Assessment of Functioning. *See Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. ("DSM IV"). A score of 51 to 60 signifies "moderate" symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. *Id.* GAF scores have been described as a "rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citation omitted). However, pursuant to Agency regulations, the GAF scale has no "direct correlation to the severity of requirements in Social Security Administration mental disorder listings." *See* 65 Fed. Reg. 50746, 50764-6. "The DSM V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Olsen v. Comm'r Soc. Sec. Admin.*, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) (quoting DSM-V, 16 (5th ed. 2013)).

the next twelve months. (AR 552.) Dr. Botros found Plaintiff could handle her personal finances. (AR 552.)

### D. Applicable Law

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. 404.1527.[6] Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632. If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.* Similarly, an ALJ must satisfy the clear and convincing reasons standard to reject an uncontradicted examining physician's opinion or satisfy the specific and legitimate reasons standard to reject a contradicted examining physician's opinion. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).

An ALJ can satisfy the specific and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632.

//

---

[6] Effective March 27, 2017, the Social Security Administration revised its regulations directing the evaluation of medical opinion evidence, including 20 C.F.R § 404.1527. But these revisions are not applicable or relevant to the analysis here relating to Plaintiff's November 25, 2013 application for DIB benefits.

11

### E. Analysis

The ALJ gave "little weight" to the opinion of Dr. de Selivtor. (AR 32.) Plaintiff disputes the ALJ's treatment of Dr. de Selivtor's opinion. Plaintiff states that Dr. de Selivtor "is a treating provider at Hillview Mental Health Center. The record is unclear whether he can be attributed treating status and the ALJ did not indicate how he viewed him." (Joint Stip at 4.) Plaintiff argues that the ALJ needed to provide specific and legitimate reasons to reject Dr. de Selivtor's contradicted opinion and failed to so. (Joint Stip. at 4-7.) Plaintiff further argues the error was not harmless because Dr. de Selivtor's opinion "would eliminate competitive employment." (Joint Stip. at 7.) Plaintiff does not challenge the ALJ's treatment of any of the other medical evidence or opinions in the record. Defendant argues the ALJ provided specific and legitimate reasons to reject Dr. de Selivtor's opinion but notes that it is unclear if Dr. de Selivtor is a treating physician. (Joint Stip. at 7-12.)

The Court notes that the ALJ did not state what category of physician he considered Dr. de Selivtor to be. (*See* AR 22-35.) The Court also notes that it has found no evidence in Plaintiff's record, other than Dr. de Selivtor's single 2015 opinion document (AR 553-54), that shows Dr. de Selivtor treats Plaintiff or works at Hillview. The fact that Plaintiff testified she did not know or recall a Dr. de Selivtor also undermines Plaintiff's counsel's assertion at the ALJ hearing and in the Joint Stipulation that Dr. de Selivtor is a treating physician. (*See* AR 73, 79; Joint Stip. at 4-7, 13.) However, the Court will apply the standard required to reject a treating or examining physician's contradicted opinion because even under this highest possible applicable standard[7], the Court still finds that the ALJ did not err in discounting Dr. de Selivtor's opinion. Thus, any error in failing to specifically categorize Dr. de Selivtor as a treating, examining, or non-examining physician is harmless.

//

---

[7] The higher standard required to reject an uncontradicted treating or examining physician opinion is not applicable because Dr. de Selivtor's opinion is contradicted by the opinion of Dr. Botros.

12

The ALJ gave little weight to Dr. de Selivtor's opinion because his "opinion that the claimant would miss more than three days of work a month is inconsistent with the severity of functional limitations he assessed." (AR 32.) Dr. de Selivtor opined that Plaintiff's mental abilities for both unskilled and semi-skilled or skilled work were primarily limited but satisfactory but then also opined she would miss work more than three days per month. (AR 553-54.) This is inconsistent. It also is inconsistent that Plaintiff would be able to maintain regular attendance and be punctual but would miss three days of work per month. (AR 553-54.) Dr. de Selivtor's opinion is internally inconsistent in concluding that Plaintiff could sustain an ordinary routine and perform at a consistent pace, but could not complete a normal workday and workweek without serious interruptions from psychologically based symptoms. (*See* AR 553-54.) His opinion is also inconsistent in finding that Plaintiff would be seriously limited in her ability to deal with the normal stress of unskilled work, but only had limited but satisfactory limitations in her ability to deal with the stress of semi-skilled and skilled work. (AR 553-54.)

Inconsistency in a doctor's opinion is a specific and legitimate reason to reject that doctor's opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Matney v. Sullivan*, 981 F.2d 1016, 1019-20 (9th Cir. 1992). Dr. de Selivtor did not provide any explanation as to the reasoning behind his opinion that might explain the inconsistencies. While an ALJ has a duty to develop the record, that duty "is trigged only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). The ALJ did not find Dr. de Selivtor's opinion was ambiguous or inadequate, he found it was "inconsistent with the severity of functional limitations he assessed." (AR 32.) While there may be another rational interpretation of Dr. de Selivtor's opinion, because there are inferences that can reasonably be drawn that support the ALJ's finding of inconsistency, the Court must uphold the ALJ's decision. *Molina*, 674 F.3d at 1111 (citation omitted). Accordingly, this was a specific and legitimate reason to reject Dr. de Selivtor's opinion.

13

## CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: February 11, 2019

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE